Scranton Corporation et al., Petitioners *v.* Workmen's Compensation Appeal Board (Morris), Respondents.

Argued April 2, 1984, before Judges ROGERS, PALLADINO and BARBIERI, sitting as a panel of three.

*James M. Scanlon, Scanlon, Howley, Scanlon & Doherty,* for petitioners.

*Howard M. Spizer,* for respondent, Sylvania Morris, widow of John Morris.

OPINION BY JUDGE BARBIERI, May 30, 1984:

Scranton Corporation, employer, and its insurer, Employers Fire Insurance Company (Petitioners), appeal here from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision awarding compensation to Sylvania Morris, widow of John Morris, deceased employee, on the ground that the death of her husband was due to occupational disease.[1]

Deceased employee, John Morris, was awarded compensation during his lifetime for total disability due to occupational disease involving his lungs after

---

[1] While there are two appeals consolidated for our consideration here both are in the proceeding instituted by the widow-claimant's petition. Our comments will be addressed to No. 1242 C.D. 1983. No. 1276 C.D. 1982 is an appeal from a remand order of the Board dated April 29, 1982. The referee's order following the remand was filed May 19, 1982, before the date of the appeal to No. 1276 C.D. 1982 (docketed May 26, 1982). Our order will quash the appeal at No. 1276 C.D. of 1982 since it is an appeal from an interlocutory order.

fifty-four years of exposure to cotton dust in his employment. At the hearing on the widow's Claim Petition, the record of the prior proceeding was made part of this record by agreement and it is established that the decedent was last employed on October 12, 1973; that he was awarded compensation under date of September 9, 1975 and received total disability benefits from October 21, 1974 until his death on June 7, 1978. The referee's finding No. 4 reads:

4. In a decision dated September 9, 1975 the undersigned Referee found as a fact that the decedent was exposed to and inhaled cotton dust during the entire period of his long employment of approximately 54 years in the textile industry.

Your Referee found as a fact that as a result of his prolonged exposure to cotton dust during his employment with the defendant, the decedent suffered from pulmonary fibrosis, chronic bronchitis and pulmonary emphysema as a result of which he became totally disabled on November 21, 1974.

Your Referee ordered the defendant's insurance carrier to pay to the claimant compensation for total disability at the rate of $106.00 per week from November 21, 1974 and indefinitely thereafter, with deferred payments of compensation bearing interest at the rate of ten percent. The Referee dismissed the Commonwealth of Pennsylvania as a party defendant.

In seeking benefits, the widow's Claim Petition avers that her husband's death resulted from occupational disease under subsections 108(k), 108(n) and 108(p) of The Pennsylvania Workmen's Compensation Act.[2]

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§27.1(k), 27.1(n) and 27.1(p).

Our review of the record indicates that recovery herein could not be predicated on silicosis under Section 108(k), but an award could be supported on this record under Section 108(n), the generic, so-called "omnibus," occupational disease provision, or under Section 108(p), byssinosis due to exposure to cotton dust. While the referee's and Board's decisions do not specifically designate under which of these two sections, Sections 108(n) or 108(p), liability is imposed, since the record supports an award entered under either section, we will affirm.

At the outset, we note that confusion in this case at the referee level arose out of the fact that an apparent misdiagnosis was entered in the death certificate which stated as the immediate cause of death: "Arteriosclerotic Heart Disease with Cardiac Decompensation;" that the "interval between onset and death" was two weeks; and "[o]ther significant conditions—conditions contributing to death . . . Anthraco-silicosis with infection;" noting also that no autopsy was performed. Since admittedly decedent had never been employed in a coal mine, the uncontradicted medical testimony establishes that the Anthraco-silicosis designation was in error.[3] The hospital records, on the other hand, contain three items under "Final Diagnosis:" "Emphysema, Arteriosclerotic Heart Disease with Cardiac Decompensation, Pneumonitis." The uncontradicted medical testimony establishes that these "Final Diagnosis" conditions are lung diseases caused by byssinosis and that, with or without the diagnosis of the disease byssinosis, these lung dis-

---

[3] Diagnoses in death certificates may be questioned and are open to explanation and contradiction. *Griffin v. National Mining Co.*, 127 Pa. Superior Ct. 588, 193 A. 447 (1937). Also, the competence of statements in death certificates may be questioned, *inter alia*, if there is no autopsy. *Leonard v. Automative Maintenance, Inc.*, 61 Pa. Commonwealth Ct. 200, 433 A.2d 572 (1981).

eases causing death are fully established as compensable under Section 108(n) in that they result (1) from exposure in decedent's employment, (2) are causally related to occupational hazards in that employment, and (3) the incidence of these diseases suffered by decedent and causing his death are substantially greater in his textile industry employment than in the general population. *Id.* Section 108(n); 77 P.S. §27.1(n).

Dr. Sander Levinson, Board certified in internal medicine and in the sub-specialty of pulmonary diseases, who had testified in the lifetime proceeding and who had been decedent's attending physician at the outset, testified:

Q. Do you have an opinion, Doctor, based on reasonable medical certainty whether the death which resulted on June 7, 1978 was caused by the employment of Mr. Morris for fifty-two years at Scranton Corporation?

A. Yes, I do.

Q. What is that opinion?

A. I feel that his death was causally related to his work at the Scranton Lace Corporation for the time that he spent there.

Q. Doctor, how would you classify this disease, what would you call it that he had?

A. The disease that he had is one of the pneumoconioses and it would come under the classification of *byssinosis,* pulmonary emphysema and interstitial fibrosis.

Q. Is it your opinion that this disease, this type of a disease, would occur in the area of employment where Mr. Morris worked?

A. It would be my opinion that *this disease that Mr. Morris had would be of a greater frequency in the type of employment that he worked in than would be seen in the general population.* (Emphasis added.)

Concerning the Anthraco-Silicosis misdiagnosis in the death certificate, Dr. Levinson testified:

Q. So as I understand it then, the doctor who made out this report, his final diagnosis would be saying that these three things that he had listed here in code are the three things that caused the death of this man?

A. I would say so, that these were the three major conditions which were present at the time of his death, yes.

. . . .

Q. And, so therefore, you certainly wouldn't be able to disagree with Dr. Shibley's opinion in Paragraph 26 of the Death Certificate that the immediate cause of death was arteriosclerotic heart disease and cardiac decompensation, could you?

A. Well, I think that that was the *immediate cause;* in other words, his heart gave out, that was the immediate cause of death. (Emphasis added.)

. . . .

A. In terms of the Death Certificate, and I did discuss this directly with Dr. Shibley; I would disagree with the fact that he has down anthracosilicosis. This is also a pneumoconiosis-anthracosilicosis—and it's common that this may often be confused, one type of pneumoconiosis may be confused with another, but I

couldn't make a diagnosis of anthracosilicosis in this individual because he never worked in the mines, to the best of my knowledge.

Specifically, as to byssinosis, Dr. Levinson testified:

Q. Now Doctor, you've indicated that the type of disease this man had, the interstitial fibrosis, byssinosis-type of pulmonary disease, is that correct.

A. Yes.

Q. Alright, now, how does that relate to emphysema?

A. Well, byssinosis is a disease that relates to chronic cotton dust deposition in the lung. Eventually over the course of many years, this dust depositing there and consequent inflammation and destruction of lung tissue, this disease eventuates in emphysema. After a person had byssinosis for, say, ten or twenty years, you couldn't tell his emphysema—you know, it would look like emphysema at that point.

Q. Emphysema and byssinosis and fibrosis are all pulmonary diseases aren't they?

A. Emphysema is a pulmonary disease; fibrosis is not, that is a condition, not a disease entity. Fibrosis is scar tissue in the lung and that can come from many different causes, not a specific disease.

It is obvious in light of the above excerpts from Dr. Levinson's testimony that cotton dust exposure, causing byssinosis or other pneumoconioses conditions brought about the decedent's lifetime total disability

and his death. In essence, the byssinosis, also known as "brown lung" disease, actually caused the emphysema, the arteriosclerotic heart disease and the pneumonitis all of which resulted in John Morris' cardiac death.

It remains simply to note that referee Donlan had disallowed compensation on this record ruling as a matter of law that he could not make an award in light of our decision in *Consolidation Coal Company v. Workmen's Compensation Appeal Board,* 37 Pa. Commonwealth Ct. 412, 391 A.2d 14 (1978). Declaring this to be error of law, the Board remanded. On the remand, the referee entered an award and, on appeal, the Board cited, as additional authority for its remand and for affirming the referee, our decision in *Evon v. Workmen's Compensation Appeal Board,* 70 Pa. Commonwealth Ct. 325, 453 A.2d 55 (1982). We note, in passing, that, in our view, the uncontradicted testimony here is quite adequate to meet the standards pronounced in *McCloskey v. Workmen's Compensation Appeal Board,* 501 Pa. 93, 460 A.2d 237 (1983) and *Manuel v. N.L. Industries,* 502 Pa. 329, 466 A.2d 606 (1983).[4]

Accordingly, as established above, the claimant is clearly entitled to the award for her husband's death and so the order of the Board will be affirmed.

## ORDER

Now, May 30, 1984, the order of the Workmen's Compensation Appeal Board at No. A-83917, dated April 14, 1983, is hereby affirmed, and the petitioners' appeal docketed at No. 1276 C.D. 1982 is hereby quashed.

Judge PALLADINO dissents.

---

[4] In light of *McCloskey* and *Manuel*, *Evon* may no longer be authoritative in cases where the occupational disease condition is merely a contributing cause of death.